UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAYLAND COLES,

        Plaintiff,

                                            Case number 04-73671

v.                                          Honorable Julian Abele Cook, Jr.

FLEX-N-GATE FORMING TECHNOLOGIES,      Mag. Judge Steven D. Pepe
LLC, a Michigan Corporation

        Defendant.

## ORDER

On September 21, 2004, the Plaintiff, Gayland Coles, filed this lawsuit, in which he contended that his civil rights had been violated by the Defendant, Flex-N-Gate Forming Technologies, LLC, [1] in violation of existing federal and state law.[2] In his Complaint, he has accused his former employer of, among other things, (1) subjecting him to a hostile work environment, (2) retaliating against him because of several administrative complaints that he had made against the Company and other employees, and (3) knowingly making employment decisions (e.g., promotion) on the basis of his race. FNG, after denying all of Coles' substantive claims, filed a motion for summary judgment under Fed.R.Civ.P. 56, in which it asserted that there are no genuine issues of a material fact to be resolved in this controversy.

For the reasons that have been set forth herein below, the Court will grant, in part, and

---

[1]The Defendant will be identified in this Order as FNG or Company, interchangeably.

[2]Coles cites 42 U.S.C. § 1981, Title VII of the Civil Rights Act, and the Michigan Elliot-Larsen Civil Rights Act as the statutory bases for his charges against FNG.

deny, in part, FNG's dispositive motion.

I.

Coles was employed as a laser operator during all of the times that are material to this litigation. The quality of his work effort during his tenure with the Company was evaluated according to three different wage classification schedules; namely, "Levels A" (highest), "B" (middle), and "C" (lowest).

In late January 2001, Coles registered an administrative complaint with the Company, through its Human Resources Manager, Kathy Lecik, contending that he had been the unwilling target of numerous racial invectives from his fellow employees.[3] Following a series of interviews, all of the identified workers were, among other things, required by the Company to participate in an harassment training session, along with a warning of potential disciplinary action against them in the event of future misconduct.[4]

Coles also complained that he was denied promotional opportunities[5] and subjected to unjustified disciplinary action because of his race. In his accusation, he pointed to some Caucasian workers who, despite having performed the same employment infractions and

---

[3] Coles identified the following employees who had made offensive racial remarks to or about him: Robert Wilson, Adam Sterotska, Gerald Ossowski, Kevin Skirchak, Tony Podsiadlik, Jeff Kleisinger, Roland Fox, and Bill Gruzwalski.

[4] The harassment training involved watching a video tape, reviewing the material that accompanied the video, and discussing the Company's policy relating to workplace harassment, anti-harassment, and sexual harassment issues. However, Coles maintains that this training video did not focus upon racial harassment. Nevertheless, FNG posits that he expressed satisfaction with the investigation process and its outcome.

[5] In 2001, 2002 and 2003, Coles received annual performance evaluations of "average" and "meets expectations." Although the Company provided him with modest wage increases, he did not obtain a promotion from his "Level C" grade.

committed similar violations of Company policy, were promoted but never disciplined.[6]  Coles has also accused his former employer of knowingly maintaining a racially hostile work atmosphere by implicitly or explicitly permitting its employees to verbally[7] and physically[8] assault him with impunity and without fear of punishment or discipline.

On August 29, 2003, the Company issued Coles a written memo in the form of a "final warning" regarding his alleged failings as a FNG employee. During the later days of September 2003, FNG reduced its work force due to a decline in business.  As a consequence, Coles and twelve other employees were laid off. Only three laser operators in the Laser Department (all "Level A" workers) were retained [9]

In November 2003, FNG's business activities improved and, as a result, three of the laid

---

[6] Coles complains that race was a factor in his receipt of a written warning for "unsatisfactory performance" (i.e., carelessness) when he crashed a laser in May 2002. While acknowledging that he incorrectly loaded the program, Coles maintains that neither Robert Shafer, nor Jeff Kleisinger, both of whom allegedly crashed lasers on more than one occasion, received any form of discipline from the Company.

[7] Coles points to an incident in mid-December 2002 involving Tom Rzeszotarski whom he accused of greeting him with "Heil Hitler" hand signals. Following the filing of an administrative complaint, Rzeszotarski apologized to Coles and the issue was officially resolved. Coles also identifies several exchanges of unpleasantries with other workers (Dean Higbee, Brian Cameran, and Maurice Addis) as the sources of his work related problems.

[8] In January 2003, Coles reported an incident, in which he accused Richard Laubscher of deliberately colliding with him. However, Laubscher maintains that the collision was caused by Coles. No disciplinary action was taken by FNG.

[9] According to the policy of the Company in September 2003, all employees were subject to being (1) laid off on the basis of length of service within their job classification, and (2) rehired in reverse order of the lay off procedure. FNG also maintained a policy which stated, in essence, that an employee, who was laid off for more than thirty days, would lose his seniority and be classified as a "terminated employee" who would be considered for rehiring only at the discretion of the Company.

off laser operators (all "Level B" workers) were rehired. The Company also (1) rehired Michael Perlejewski, a co-worker who had three years less seniority than Coles, and (2) hired Anthony Scianna as a 'Level C" laser operator.  A meeting was also conducted by FNG to discuss future staffing matters, including the issue of whether Coles should be rehired. Believing that it was not in the best interests of FNG to return Coles to its employment rolls, the management team elected not to rehire him.

On June 3, 2002, Coles filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 3, 2002, alleging that he had been wrongly labeled as a disgruntled and counterproductive employee because of his numerous challenges to disciplinary claims by the Company.   This charge was dismissed on August 23, 2002. A second complaint, which was filed with the EEOC in mid-May 2003, was subsequently dismissed on July 1, 2004.

II

The Supreme Court has opined that "[o]ne of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  At the same time, the language within Rule 56© provides that a motion for summary judgment should be granted only if a party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."  The burden is on the movants to demonstrate the absence of a genuine issue of a material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the court must examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party. Fed. R. Civ. P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v.*

4

*Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). It is not the role of the Court to weigh the facts. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435-36 (6th Cir. 1987). Rather, it is the duty of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Hence, the moving party can show that a genuine factual issue is lacking if it presents evidence which is sufficient to make the issue "so one-sided that [they] must prevail as a matter of law," *id.* at 252, or point to a failure by the non-moving party to present evidence "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Upon such a showing, the non-moving party must act affirmatively to avoid the entry of a summary judgment. Fed. R. Civ. P. 56(e). A mere scintilla of supporting evidence is insufficient. *See Anderson*, 477 U.S. at 252, *quoted in Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Indeed, "[i]f the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III.

Coles' "failure to promote" claim is time barred because of his failure to exhaust all of the requisite administrative remedies prior to the commencement of this lawsuit. Typically, in order for a federal court to have jurisdiction to hear this type of a claim, a complainant - such as Coles - must explicitly raise the issue before the Equal Employment Opportunity Commission ("EEOC") or, alternatively, the matter must have been reasonably expected to develop from the

EEOC charge. *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). The general rule is that a complaint must be "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp.*, 302 F.3d 367, 380 (6th Cir. 2002) (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)).

Although Coles filed two claims with the EEOC, he failed to assert a "failure to promote" claim in either of his two complaints. As a result, the EEOC did not undertake any type of investigation regarding the merit of this claim. Therefore, this Court does not have jurisdiction to hear Coles' "failure to promote" claim under these circumstances.

IV.

Coles' "failure to promote" claim is time barred because of his failure to exhaust all of the available administrative remedies. Typically, in order for a federal court to have jurisdiction to hear this type of a claim, a complainant must explicitly raise the issue before the Equal Employment Opportunity Commission ("EEOC") or, alternatively, the matter must have reasonably been expected to grow out of the EEOC charge. *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). The general rule is that a complaint must be "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp.*, 302 F.3d 367, 380 (6th Cir. 2002) (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)).

An examination of the record in this cause reveals that Coles filed two complaints with the EEOC. However and significantly, he failed to assert a "failure to promote" claim in either of his two complaints. As a result, the EEOC did not undertake any type of investigation regarding the merit of this claim. Therefore, this Court does not have jurisdiction to hear his

"failure to promote" claim under these circumstances.

IV.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000-e2 (2005). An aggrieved employee may establish a *prima facie* case for racial discrimination by introducing direct or circumstantial evidence with the use of the *McDonnell-Douglas* burden-shifting paradigm. *Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997).

In a direct evidence case, the plaintiff must present "direct testimony that the employer acted with a discriminatory motive." *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 172 (6th Cir. 2004). In 1987, the Sixth Circuit Court of Appeals opined that direct evidence requires the fact finder to conclude that an act of unlawful discrimination was at least a "motivating factor" for the employer's actions. *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111, 114-15 (6th Cir. 1987). If the employee is successful in meeting this standard, the burden of persuasion shifts to the employer to demonstrate that the challenged employment decision was made without any unlawful discriminatory considerations. *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999).

FNG submits that Coles was terminated on the basis of an existing policy which enabled it to exercise its discretion regarding the employment of future workers. The Company also acknowledged that Coles' work record (which included a continuing series of confrontations with his fellow workers, discipline warnings and violations of Company policies) were

7

considered by management in its hiring decision.

Coles rejects these contentions for not rehiring him as being pretextual and racist. As evidence of FNG's discriminatory bias, he points to the rehiring of Michael Perlejewski who is three years his junior in terms of seniority. With recognition that the Company hired a new worker, and relocated one employee to another department to the exclusion of Coles, it is at least arguable that an unlawful act of discriminatory conduct was a motivating factor in FNG's hiring decision. Now, the burden of persuasion shifts to FNG to demonstrate that its decision not to rehire Coles was made without any racial bias or a discriminatory intent.

According to FNG, Coles' termination was based upon the Company's facially non-discriminatory policy which allowed it to treat Coles, and every other similarly situated person, as a "terminated employee" without any seniority or a contractual right to be hired. Thus, this Court determines Coles has failed to establish a *prima facie* case for racial discrimination through the use of direct evidence.

As an alternative, discriminatory conduct may be proven by using the *McDonnell-Douglas* burden shifting paradigm. *Kline*, 128 F.3d at 342. A Plaintiff, such as Coles, must initially establish a *prima facie* case of unlawful discrimination. *Id.* If a *prima facie* case is established by the aggrieved party, then it is incumbent upon the respondent - in this case, FNG, to satisfactorily demonstrate a legitimate nondiscriminatory reasons for its employment decision. *Id.* If the employer meets its burden, then the employee must prove that the stated reasons were pretextual. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804 (1973)).

In order for Coles to establish a prima facie case of a hostile work environment on the

basis of his race, there must evidence that he (1) is a member of a protected class, (2) was subjected to an unwelcome act of racial harassment, (3) the harassment was based on his race, (4) the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment, and (5) the existence of employer liability. *DiCarlo v. Potter,* 358 F.3d 408, 415 (6th Cir. 2004).

Coles is a member of the protected class of African-Americans. He was subjected to unwanted racial harassment when his fellow workers referred to him as "boy" on several occasions. He was also the object of several racist jokes by his work colleagues. There is also a contention by Coles that he was ignored by his co-workers, treated as an intellectually inferior person, and cautiously considered to be a dangerous and intimidating person. The harassment interfered with his work, causing tension with his co-workers, supervisors, and managers. Consequently, it is, at least arguable, that FNG impliedly condoned their employees' conduct by failing or refusing to impose appropriate disciplinary measures or work station safeguards. Therefore, Coles has established a *prima facie* case of hostile work environment.

In order to establish a *prima facie* case of unlawful discriminatory conduct, Coles, as the Plaintiff in this cause, must show that he (1) is a member of a protected group, (2) was subjected to an adverse employment decision, (3) was qualified for the position, and (4) was replaced by a person outside of his protected class. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

This Court concludes that Coles is a member of a protected class who was subjected to an adverse employment decision when he was not rehired despite his experience and length of service as a laser operator with FNG. Coles was replaced by Anthony Scianna, a Caucasian

male. There is also evidence that the Company rehired Michael Perlejewski, whose seniority was three years junior to Coles. Therefore, Coles has established a *prima face* case of discrimination.

In order to establish a *prima facie* claim of disparate treatment, a party who seeks relief is obliged to "produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 479 (6th Cir. 2003) (quoting *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1982)). Moreover, "the plaintiff must show that the 'comparables' are similarly-situated in all respects, absent other circumstantial or statistical evidence supporting an inference of discrimination." *Id. (*quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998)).

Jeff Kleisinger was comparable to Coles even though he was a "Level A" operator. He and Coles reported to, and were evaluated by, Oakey and D'Acquisto. Both of them worked on the same shifts and performed the same basic tasks. Their similarities continued through May 2002 when these two men received "meets expectations" evaluations. Notwithstanding, the Company classified Kleisinger and Coles as "Level A" and "Level C" operators, respectively. A review of their evaluations revealed that they were similarly situated with the exception of two areas; namely, Coles was (1) a member of a protected class, and (2) disciplined for crashing lasers while his co-workers were not disciplined for the same handling of their work assignments. Accordingly, Coles has established a *prima facie* case of disparate treatment.

In order for Coles to establish a *prima facie case* of unlawful retaliation under Title VII, there must be a demonstration of proof by him, with a preponderance of evidence, that (1) he

engaged in an activity that is protected by Title VII, (2) FNG knew that he was engaged in this protected activity, (3) his employer subsequently took an employment action which was adverse to him, and (4) there exists a causal connection between the protected activity and the adverse employment action. *Abbot v. Crown Motor Co. Inc.,* 348 F.3d 537, 542 (6th Cir. 2003).

An examination of the official record reveals that Coles was engaged in a protected activity at a time when he claims to have been subjected to racial discrimination and retaliation by his employer. It is readily apparent that FNG, as Coles' employer, was aware that he was engaged in a protected activity during the times that are relevant to this controversy. Coles was also engaged in a protected activity when he filed charges against the Company with the EEOC in June 2002 and May 2003. According to Coles, he was subjected to unfair disciplinary action and was given unsatisfactory performance evaluations in retaliation for filing his complaints. Additionally, he asserts that these actions essentially limited his opportunities to be promoted and ultimately formed the basis for a denial of his re-hire. Thus, the Court determines that Coles has established a *prima facie* case of discrimination.

In this situation, the burden shifts to FNG to demonstrate that there exist legitimate nondiscriminatory reasons for its actions. Here, the Company maintains that the disciplinary actions taken against Coles were based upon his employment record. The Company maintains that Coles was laid off due to a decline in its business. The policy of the Company dictated that he was considered to be a "terminated" employee after the expiration of thirty days from the date of his discharge. Thus, it was in FNG's discretion to evaluate the merit of rehiring or retaining Coles as an employee. It soon became evident that the Company concluded that Coles was no longer an asset to its business in light of his past employment record. Accordingly, FNG

has demonstrated a legitimate nondiscriminatory reasons for its actions.

It is important to note that credibility determinations cannot be resolved through the process of evaluating a request for the entry of a summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In this case, a genuine issue of a material fact exists regarding the true motivations for the Company's decision not to rehire Coles. As a consequence, Consequently, a summary judgment is not the appropriate course of action at this stage.

V.

For the reasons that are stated above, FNG's motion for a summary judgment is denied on all of Coles' claims except for his "failure to promote" claim.

IT IS SO ORDERED.

Dated : <u>February 9, 2006</u>         s/ Julian Abele Cook, Jr.
    Detroit, Michigan              JULIAN ABELE COOK, JR.
                                United States District Judge


Certificate of Service

I hereby certify that on February 9, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

s/ Kay Alford
Courtroom Deputy Clerk